JASPER KELLY, RESPONDENT, *v.* MARTHA WEBER, AS EXECUTRIX, AND ALBERT WEBER, AS EXECUTOR, ETC., OF ALBERT WEBER, DECEASED, APPELLANTS.

*Statute of limitations — what does not operate as a payment to stop the running of it — the payment must be made by the debtor or his agent, not by his creditor under trustee process.*

In this action, brought by the plaintiff, as the assignee of one Flaherty, the defendants pleaded that the statute of limitations had run against the demand before the death of their testator. The plaintiff, in order to prove a part payment on account of the demand, showed that his assignor had brought an action upon the demand, in Boston, and recovered a judgment by default against the testator, no personal service having been made upon him, and no one having appeared in his behalf. In that action a trustee process was issued against the present plaintiff, as a debtor of the testator, and the plaintiff appeared therein and admitted the indebtedness. After the entry of the judgment it was assigned to the plaintiff, who issued an execution to the sheriff, and subsequently paid to him the amount of the indebtedness, and the same was applied upon the judgment.

*Held,* that this was not such a payment as would take the case out of the statute of limitations.

APPEAL from a judgment in favor of the plaintiff, entered on the verdict of a jury, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

*Lydecker & Romaine,* for the appellants.

*E. C. Ripley,* for the respondent.

DAVIS, P. J.:

This action was brought by the plaintiff as assignee, of one Flaherty, of the demand in suit. The defendants, among other things, pleaded that the statute of limitations had run against the demand before the decease of their testator, Albert Weber. The plaintiff replied to this defense, alleging in substance that a payment had been made upon the demand within six years before the decease of Weber, which operated as a new promise.

FIRST DEPARTMENT, APRIL TERM, 1882.

To sustain the reply it was shown that Flaherty, the plaintiff's assignor, commenced a suit against the defendants' testator in the city of Boston upon the same alleged cause of action, in which suit no personal service was made upon the defendant. No one appearing on his behalf a judgment was taken by default. In that suit it appeared that a trustee suit process was issued against the present plaintiff Kelly, as a debtor of the deceased testator, to the amount of some $360, and that Kelly appeared on his own behalf in the action and admitted his own indebtedness.

It also appeared that after the judgment was recovered by Flaherty he assigned the same to Kelly, the plaintiff in this action, and that an execution was issued on that judgment upon which Kelly some time after such assignment paid to the sheriff the amount of his indebtedness to the testator to apply upon the execution in the sheriff's hands, and that the sheriff, after deducting his fees, paid the balance to the attorneys in the action and took their receipt to apply on the judgment.

This payment by Kelly upon the execution issued upon the judgment which he then owned, of the indebtedness which had been trusteed or attached in his hands, it is claimed operated as a new promise on the part of Weber by which he recognized and promised to pay, as an existing indebtedness, the demand for which Flaherty had recovered the judgment. At the time the suit was commenced by Flaherty, and trustee process served upon Kelly, Kelly wrote to the testator Weber stating that Flaherty had commenced a suit against him and that he had been served with trustee process and could not, therefore, pay to Weber the indebtedness which he owed him and advising him to appear and defend the suit. To this no reply was made by Weber, and so far as the case shows no attention to the suit was given by him. The question whether the payment of the indebtedness of Kelly under the circumstances operated as a new promise to revive the claim as of that date was submitted by the court to the jury. Due exception was taken to that course by the defendants' counsel and the court was, in substance, requested to rule that the payment had no effect to take the claim out of the operation of the statute of limitations; and to the refusal of the court so to rule exception was taken.

We think the question arising upon these facts should have been

disposed of as one of law. Kelly was not the agent of Weber for the purpose of making the payment. It was in fact a payment to himself, for he was then assignee of the judgment and of whatever claim Flaherty had against Weber. The whole transaction savors of collusion between himself and Flaherty to the prejudice of Weber. It is a well settled rule that no person can make a payment upon an indebtedness which will operate as a new promise to take it out of the statute of limitations, except the debtor or his authorized agent.

In *Smith* v. *Ryan* (66 N. Y., 352) this rule is laid down at page 356 in these words : " The principle is recognized in all the cases, that a payment which is to operate as an acknowledgment must be made by the debtor or his authorized agent ; that is, an agent having authority to make a new promise, or to perform for the party the very act which is to be the evidence of a new promise." (*Harper* v. *Fairley*, 53 N. Y., 442 ; *First National Bank of Utica* v. *Ballou*, 2 Lans., 120 ; affirmed 40 N. Y., 155.) * * * There is no agency as between several joint debtors, or between principal and surety, or between an insolvent debtor and his assignees, which will make a payment by one evidence of an acknowledgment of the debt of the others so as to revive the demand."

It would seem to follow from the principle on which that case rests that the debtor of the defendant, in the payment of his debt to the plaintiff, was not the agent of the defendant.

In *Smith* v. *Ryan* the debtor had delivered to his creditor the note of a third person not then due, to apply upon the indebtedness. When the note matured the maker paid it to the creditor, who applied the money upon the debt, and the question was, whether that payment made by the maker of the note could operate as a new promise to take the indebtedness, for which the suit was brought, out of the operation of the statute. The court held in substance that it could not, because there was no relation of principal and agent between the maker of the note and the original debtor, and that the payment could not therefore be construed against such debtor as a promise to pay the indebtedness at the time the note was paid, although the delivery of the note would be evidence of such a promise at the time of the delivery.

In this case, to make the payment by Kelly of the indebtedness to the testator, to himself upon his own judgment, operate as a new

promise to take the original indebtedness to Flaherty out of the statute for the benefit of Kelly, the court must hold that the relation of principal and agent existed between Weber and Kelly to an extent that would have authorized Kelly to make a new promise for Weber, which would revive the debt. We think there is no principle upon which that can be held. The whole proceeding as against Weber, the testator, was in *invitem*, by which Flaherty acquired the right to compel Kelly to pay the amount of his indebtedness to Weber, into court for his benefit, and the mere fact that Weber did not choose to appear in the action for the purpose of contesting that right, cannot be construed into a consent on his part that Kelly should become his agent to make a new promise in any form either to Flaherty or to himself that would revive or continue any indebtedness he might have owed to Flaherty. Payment by a debtor personally or by his authority is nothing more than evidence from which an intent to renew the original promise may be inferred. (*Shoemaker* v. *Benedict*, 1 Kern., 185; *McLaren* v. *McMartin*, 36 N. Y., 88.)

The court should, therefore, have disposed of this question by instructing the jury that the act of Kelly in paying the money to the sheriff, under the circumstances, was not evidence of a promise on the part of Weber, the testator, which could take the claim out of the statute of limitations. For the error in refusing so to do, the judgment must be reversed, and a new trial granted.

There are in the case exceptions amounting to something like 120 in number; and very numerous objections where exceptions were not taken.

It is quite probable that some of the exceptions raise questions fatal to a recovery, but we do not think it our duty to sift them out of the crude mass presented, for the purpose of considering them. It is enough that there must be a new trial upon the question already considered.

The judgment must be reversed and a new trial granted, with costs to abide the event.

Daniels, J., concurred; Brady, J., not acting.

Judgment reversed, new trial granted, costs to abide event.