WILLIAM MILLER, Respondent, *v.* ADNA TALCOTT, Appellant.

On the 17th April, 1857, H. made his promissory note for $1,000, payable ninety days from date at the Bank of N. This was indorsed by defendant and by M., and was discounted by the bank. Before maturity H. failed and made an assignment. The note was duly protested for nonpayment. Soon thereafter defendant paid thereon $500. The assignees of H. made a dividend and paid to defendant ninety dollars to apply on the note. Defendant paid forty-five dollars of this sum to the bank on the 16th February, 1858, telling the cashier that it was a dividend declared by the assignees of H. to apply on the note, and that he paid it as such. On the 8th June, 1858, plaintiff purchased the note of the bank, paying the balance due thereon. This action against defendant, as indorser, was commenced February 13th, 1864. *Held*, that the pay-

ment of the forty-five dollars by defendant was a sufficient acknowledg-
ment of his liability to take the case out of the operation of the statute
of limitations.

Defendant set up in his answer and offered to prove upon the trial certain
equities between him and M., which evidence was rejected. *Held,* no
error; that plaintiff succeeded to all the rights of the bank as a *bona fide*
holder, and that the respective liabilities of the indorsers, as between
themselves, was entirely immaterial to the bank or to plaintiff.

(Submitted March 10, 1873; decided June term, 1873.)

APPEAL from judgment of the General Term of the Supreme
Court, in the sixth judicial district, in favor of plaintiff,
entered upon an order denying motion for a new trial, and
directing judgment on a verdict. (Reported below, 46 Barb.,
171.)

This action was brought on the 13th day of February,
1864, against the defendant, as first indorser of a promissory
note, made by one Hughston, bearing date on the 17th day of
April, 1857, for $1,000, payable ninety days after its date, to
the order of the defendant. One Matthew Miller was second
indorser. The note was discounted by the Bank of Norwich,
and was held by that bank at maturity, and was duly pro-
tested for non-payment.

The defendant paid $500 of the principal soon after the
note fell due, and on the 16th day of February, 1858, a pay-
ment of forty-five dollars was made, under the circumstances
stated in the opinion of the chief commissioner. On the 8th
of June, 1858, the note was transferred to the plaintiff by
the bank, on the receipt from him of the balance then unpaid.

Defendant pleaded the statute of limitations, and also that
there was a partnership between the indorsers of the note,
that the note was made for the benefit of the partnership,
that he had paid his proportion thereof, and that plaintiff did
not become the holder of the note until after maturity, and
was not a *bona fide* holder. Evidence as to the relationship
between the indorsers, and for what the note was given, was
offered on the trial, and excluded, the court holding that
plaintiff had the same right as the bank. The court directed

Statement of case.

a verdict for plaintiff, which was rendered accordingly. Exceptions were ordered to be heard at first instance at General Term.

*Henry R. Mygatt* for the appellant. Plaintiff did not receive the note until after it became due and is not a *bona fide* holder for value, and took it subject to all equities. (1 Pars. on Notes and Bills, 270, 274; *Bacon* v. *Burham*, 5 Tr. Apps., 210; 37 N. Y., 614; *Chester* v. *Dorr*, 41 id., 279.) Plaintiff could not be a *bona fide* holder, unless he took the note in the usual course of business. (*Hall* v. *Wilson*, 16 Barb., 550, 552; *Bay* v. *Coddington*, 20 J. R., 651; 1 J. Ch., 58; *Wheeler* v. *Guild*, 20 Pick., 545.) The payment of forty-five dollars on the note did not take it out of the statute of limitations. (*Shoemaker* v. *Benedict*, 1 Kern., 185; *Pickett* v. *King*, 34 Barb., 195; affirmed 34 N. Y., 175; *Bloodgood* v. *Bruen*, 4 Seld., 369; *Bell* v. *Morrison*, 1 Pet., 351; *Munro* v. *Potter*, 34 Barb., 358; *Stuart* v. *Foster*, 18 Abb., 305; *McLaren* v. *McMartin*, 36 N. Y., 92; *Roosvelt* v. *Marks*, 6 J. R., 266, 292; *Winchell* v. *Hicks*, 18 N. Y., 558; *Davies* v. *Edwards*, 6 Eng. L. and Eq., 520; *Cockrill* v. *Sparks*, 1 Hurl. & Colt. [Exch.]; *Marienthal* v. *Mosler*, 16 Iowa St., 566; *Stoddard* v. *Doans*, 7 Gray, 387.) Whether the payment of interest was sufficient to remove the bar of the statute, should have been submitted to the jury. (*Edwards* v. *Goldsmith*, 15 Penn. St., 43; *Bomeisler* v. *Dobson*, 5 Whart., 398; *Winchell* v. *Hicks*, 18 N. Y., 565; *Mallory* v. *Tioga R. R. Co.*, 3 Keyes, 356; *Van Vechten* v. *Griffiths*, 1 id., 113; *Bell* v. *Morrison*, 1 Pet., 351; 3 Pars. on Con. [5th ed.], 68; *Taylor* v. *At. Mut. Ins. Co.*, 37 N. Y., 283; *Low* v. *Hall*, 47 id., 105.)

*Isaac S. Newton* for the respondent. Plaintiff, on purchasing the note, became entitled to all the rights of the bank. (Story on Prom. Notes, § 191, and refs.; *Britton* v. *Hall*, 1 Hilt., 528; *Driggs* v. *Rockwell*, 11 Wend., 504; *Chalmers* v. *Lanion*, 1 Camp., 383; *Flint* v. *Schonberg*, 1

Hilt., 532; *Demott* v. *Starkey*, 3 Barb. Ch., 406; 5 J. R., 118; 8 id., 454.) Plaintiff's recovery is not barred by the statute of limitations. (Code, § 110; *Winchell* v. *Hicks*, 18 N. Y., 558; *Winchell* v. *Bowman*, 21 Barb., 448; *Munro* v. *Potter*, 34 id., 358; 22 How. Pr., 49; *Hawley* v. *Griswold*, 42 Barb., 18; *Pickett* v. *Leonard*, 34 N. Y., 176; *Payne* v. *Slate*, 39 Barb., 637, 638.) Defendant's payment of the money on the note bound him. (18 N. Y., 558.)

LOTT, Ch. C. The judge at the circuit properly decided that, on the facts testified to by the defendant himself, the action was not barred by the statute of limitations. It appeared, by the case, and it was a conceded fact, that the maker of the note had become insolvent, and made an assignment for the benefit of his creditors, that early in January, 1858, a dividend of nine cents on a dollar, arising from the avails of his estate was made, and that ninety dollars was paid to the defendant by one of the assignees, as the amount of the dividend payable on the note in question. The defendant, after stating that it was paid to him "to apply on this note," and that the assignee paying it told him that "it belonged on this note, that it was a distribution by the assignees," testified as follows: "I kept forty-five dollars, and the other forty-five dollars I paid to the bank, to Newton, who indorsed it as coming from the assignees. I told him it was a dividend declared by the assignees of Hughston, to apply on the note, and that I paid to him as such. Nothing was said about making it as a payment by me personally." He then said, on his cross-examination, "the other half of the amount I retained; I received that of the assignees in February, at Matthew Miller's house. I can't say I was present when this indorsement was made." And after speaking of the manner in which he paid the said sum of $500, and as to some "figuring up" on the note by Newton, he said "I requested him to indorse the forty-five dollars on the note for the assignees." The indorsement of the payment on the note is in these terms: "Forty-five dollars paid by

Talcott, February 16, 1858 ; due February 16, 1858, $467.32."
From this it appears that the defendant was mistaken in saying
that Newton indorsed the payment " as coming from the
assignees," and when the fact is taken into consideration that
he afterward said " I can't say I was present when this indorse-
ment was made," that portion of his testimony must be
disregarded.

The question is then presented whether the other facts
sworn to by him operate as sufficient evidence of a new or
continuing contract, to take the case out of the statute of
limitations.   It is important, in considering its effect, to bear
in mind that they occurred within a year after the making
of the note, and that the defendant was at that time, confess-
edly, liable as indorser thereon for the balance then due.
He was, therefore, personally interested in having his liability
reduced, and although he received the money then paid from
the assignee of the maker, to be applied toward the reduc-
tion of the amount unpaid, the application was, in fact,
made by himself, and it was so made, with the object and
intention of making a payment in part satisfaction of his own
indebtedness.   The *act* was his *own personal* transaction, and
what was *said* by him to Mr. Newton in reference to it, only
disclosed the source from which the money came and that he
paid it as coming from the assignees, accompanied, in view
of those facts, with a request that the acknowledgment of the
receipt of it, which was to be indorsed on the note, should
state that fact.   He did not inform Mr. Newton, nor will the
statement which he made to him warrant the inference that
he meant to be understood as informing him that in what he
was *doing*, he was acting only as the *agent* of the assignees ; on
the contrary, the transaction was, in reality, a payment by
him on account of the note, with money furnished to him by
the assignees for the benefit of all parties liable thereon, and
it was a *personal* act, expressive of as full an acknowledg-
ment or declaration, by *himself individually*, of the non-pay-
ment of the balance then due on the note and his own
indebtedness to that amount, as if he had signed, in his

own name, a declaration or admission that the amount was then due and owing by him, and that he, in part payment of such indebtedness, paid the sum of forty-five dollars, which he had received from the assignees of Hughston, the maker, to be applied for that purpose. It may be added that the fact, sworn to by the defendant, that the amount paid to him by the assignee was ninety dollars, being a dividend of nine per cent on the whole sum ($1,000) originally payable on the note, and that he kept one-half of this sum himself is a material circumstance, in connection with the other facts stated by him, to show that he was not acting as *agent merely* of the assignees in the application of the money. It was paid " to apply on this note," and nothing was said in reference to the division of it or the retention of any part thereof by the defendant. That was clearly his individual action. The only other evidence, on the subject of this payment, was by Mr. Newton, to whom it was made. It does not vary the testimony of the defendant. The case was, consequently, one of undisputed facts, presented nothing for the jury to pass upon, and the court properly refused to submit it to them, and correctly decided in directing a verdict for the plaintiff. The statute of limitations had, by reason of the payment in question, no application to the case. (See *Ballow* v. *The First National Bank of Utica*, 49 N. Y., p. 155.)

There were some exceptions arising on questions of the admission of the evidence; but I deem it unnecessary to consider them in detail. It is sufficient to say that the evidence offered in relation to the circumstances and purpose under and for which the note was given, and the relations between the defendant and Miller, the subsequent indorser, was clearly improper. It was not claimed that the bank was not a *bona fide* holder of the note at its maturity, or that it was for any cause invalid or uncollectible in its hands; and the plaintiff having received it from the bank on payment of full value therefor, succeeded to its rights. What was the understanding or agreement between the indorsers in relation to the note or their respective liabilities as between

themselves was wholly immaterial to the bank and could not affect its rights nor that of the plaintiff.

The exceptions in reference to other matters of proof, do not appear to be relied on by the appellant's counsel; but they have nevertheless been examined, and neither of them is a ground for the reversal of the judgment appealed from.

It follows, from what has been said, that the judgment should be affirmed with costs.

REYNOLDS, C. The plaintiff succeeded to all the rights which the Bank of Norwich had against the defendant on the 8th of June, 1858, when the note in suit was delivered to the plaintiff for value. That right was to recover the amount of the note from the defendant unless a recovery was barred by the statute of limitations. The note matured and was protested on the 18th of July, 1857, although on the day previous, Matthew Miller and the defendant, both indorsers, waived demand and notice of protest, and agreed to pay the note. The action was commenced on the 13th of February, 1864, and the statute of limitations was a bar to the action unless a payment by the defendant of forty-five dollars on the note on the sixteenth of February, was such a recognition of its validity as nullified the operation of the statute.

On that day, beyond any question, the defendant was liable for the whole amount of the note, with perhaps some rights of contribution. The maker of the note had previously failed and made an assignment for the benefit of creditors. The assignees had declared a dividend of nine per cent and ninety dollars was applicable to this note. The defendant received this ninety dollars from the assignees, and paid one-half of it, forty-five dollars, to apply on the note, and it was indorsed thereon at the date named. He was then confessedly liable to pay the note. It was his privilege to pay something upon it or pay nothing until coerced. He chose to pay this forty-five dollars upon it, and thus fully recognized his liability from that date. It is not a matter of the

slightest consequence where he got the money, as the payment was his individual act.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.